


June 11, 2025

Ms. Catherine O'Hagan Wolfe,
Clerk of the Court,
United States Court of Appeals for the Second Circuit,
40 Foley Square,
New York, NY, 10007.

Dear Ms. Wolfe:

Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 25-576

On behalf of Republic Action for Argentina, Inc. ("RA4ARG"), I am writing to inform this Court of relevant institutional news coming from Argentina, which concern these legal proceedings.

Yesterday, the Argentinean Supreme Court of Justice let the conviction of six (6) years in prison against Cristina Fernández de Kirchner stand, which involved charges of fraud and racketeering to the Argentine State. The former President (two terms) and Vice President (one term) of Argentina was also disqualified for life to hold public office of any nature. Fernández de Kirchner has to surrender herself to authorities within five (5) days to start serving her time in prison.

Several of her accomplices in such criminal enterprise against, ultimately, the Argentinean people, followed the same fate, including one of the Kirchner Family's figureheads by the name of Lázaro Báez. As part of the criminal scheme, Lázaro Báez was awarded 51 public-works contracts in the Province of Santa Cruz, where he in fact started working as a teller at the provincial bank, which in turn was "privatized" by former Governor and President Nestor Kirchner to the




local Eskenazi Family: the original Plaintiffs in the present lawsuit, with the financial and technical assistance of Burford Capital Ltd.

Lázaro Báez was able to acquire 41 ranches in the Province of Santa Cruz, the equivalent of more than 20 cities of Buenos Aires, with a size of roughly 202 km2, versus more than 67 cities of Manhattan, with a size of roughly 60 km2. The estimated looting is in the billions of dollars, and the original conviction mandated former President Fernández de Kirchner, in this case alone, to return the equivalent of US$600,000,000. The legal system will now be able to seize assets for such an amount, wherever they are located.

Having stated the aforesaid, the alleged corruption scheme detailed in these legal proceedings, engulfing the Kirchner and Eskenazi Families, among others, is by far the most relevant and shocking one of the entire Kirchner regime, needless to say due to the final monetary impact of more than US$16,000 billion. It is worth recalling the Plaintiff's lawsuit was filed last 4/8/2015, when Cristina Fernandez de Kirchner was President of Argentina, and the judgment under review at this instance was entered last 9/15/2023, when she was Vice President of Argentina.

As previously argued, it is inconceivable to expect the legal representatives of the core parties to this conflict could have timely argued some alleged collusion and corruption on the part of the Kirchner and Eskenazi Families –their own clients or sides–. The Kirchner Family: as ultimate decision-makers of the Argentinean State and YPF S.A. The Eskenazi Family: as a key player and shareholder of a 25% stake –for free, insofar its own equity commitment– at YPF S.A. by the hand of the Kirchner Family, and the party that in fact triggered the lawsuit in this case with the technical and financial assistance from Burford Capital Ltd.

Yesterday's decision from the Argentinean Supreme Court shows judicial independence, strengthening the republican institutions of the country, all in the midst of significant high-level corruption. It is worth recalling former Prosecutor Alberto Nisman died hours before having to testify in the Argentinean Congress, against then President Cristina Fernández de Kirchner, for the corrupt dealings involving the Islamic Republic of Iran –after the Iranian-propelled bloody terrorist




attacks against Jewish assets in Argentina. Indeed, certain people risk more than high legal fees out of New York City for taking a stance in life. It has to be highlighted. Here there are a few lines of the Argentinean Supreme Court's decision worth of being quoted:

> "…Those circumstances, pondered at two judicial levels, brought to the conclusion that such presidential decision 'relegated the economic advantage of the public administration for the economic advantage of the particular interests of those finally benefited … Fernández de Kirchner foresaw the objective elements of the typified criminal conduct at the time of performing the typical action and also anticipated the occurrence of the prior, and, as such, the [criminal] outcome. At the same time, it was verified that the accused one wanted the criminal outcome to be a consequence of her own action, and, besides, [she] had the required desire to profit from it by the typified criminal conduct.'" […]
>
> Due process has been safeguarded and the appellant has obtained a judgment grounded in law. […]
>
> The sanctions applied are those determined by the current normative system. The imposition of a jail conviction and a ban [on holding public office for life] only shelters our republican and democratic system through the criminal laws sanctioned by the representatives of the people in the National Congress…" Argentinean Supreme Court of Justice, CFP 5048/2016/T01/49/6/RH85, *in re*, *"Fernández de Kirchner, Cristina Elisabet y otros s/incidente de recurso extraordinario"*, 6/10/2025.

In this sense, the Argentinean people, as represented by RA4ARG, deeply appreciate the latest sanction by the US government to Cristina Fernández de Kirchner and her criminal associate Julio de Vido, former Minister of Public Works –extensive to their families–, with the prohibition to enter the United States of America due to significant State-related corruption. In any case, former President Fernández de Kirchner wouldn't be able to do so any time soon.




Respectfully,

Fernando G. Irazu
Attorney at Law
President
***Republican Action for Argentina, Inc.***
Billinghurst 1656, 2 A
Buenos Aires, 1425, Argentina
fgirazu@gmail.com
+54911 3084-8080

c.c.: Counsel of Record (via ACMS)