# 25-576

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

PETERSEN ENERGIA INVERSORA, S.A.U., PETERSEN ENERGIA S.A.U.,

*Plaintiffs-Appellees*,

v.

ARGENTINE REPUBLIC, YPF S.A.,

*Defendants-Appellees,*

v.

REPUBLICAN ACTION FOR ARGENTINA, INC.

*Interested Party-Appellant.*

———————————

On Appeal from the United States District Court for the
Southern District of New York, No. 15-cv-2739

———————————

## BRIEF FOR PLAINTIFFS-APPELLEES

———————————

PAUL D. CLEMENT
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

August 4, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs-Appellees state the following:

Plaintiffs-Appellees Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. are nongovernmental corporate entities. Petersen Energía Inversora, S.A.U. is a Spanish corporation wholly owned by Petersen Energía Inversora Holdings, S.A.U., a Spanish corporation that in turn is wholly owned by Petersen Energía Inversora, S.A., a privately held Argentine corporation. Petersen Energía, S.A.U. is a Spanish corporation wholly owned by Petersen Inversiones Spain, S.A.U., a Spanish corporation that in turn is wholly owned by Petersen Energía Inversora, S.A., a privately held Argentine corporation. No public corporation owns 10% or more of the stock of either Petersen Energía Inversora, S.A.U. or Petersen Energía, S.A.U.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES .................................................................... iv

INTRODUCTION ........................................................................... 1

JURISDICTION ............................................................................ 4

STATEMENT OF THE ISSUES .............................................................. 4

STATEMENT OF THE CASE ................................................................ 5

SUMMARY OF ARGUMENT ................................................................ 9

STANDARD OF REVIEW ................................................................... 11

ARGUMENT ............................................................................... 12

I.      The District Court Did Not Abuse Its Discretion In Denying
        RA4ARG's Motion To Intervene ................................................... 12

        A.      The District Court Did Not Abuse Its Discretion in Finding
                That RA4ARG's Motion Was Untimely ..................................... 12

        B.      The District Court Did Not Abuse Its Discretion in Finding
                That RA4ARG Was Not Entitled to Intervention as of Right
                or Permissive Intervention .............................................. 18

                1.      The district court did not abuse its discretion in finding
                        that RA4ARG was not entitled to intervention as of
                        right .............................................................. 18

                2.      The district court did not abuse its discretion in finding
                        that RA4ARG was not entitled to permissive
                        intervention ...................................................... 22

        C.      The District Court Did Not Abuse Its Discretion in Finding
                That It Could Not Afford the Relief That RA4ARG Seeks .............. 24

II.     RA4ARG's Motion To Remand The Pending Appeals From The
        District Court's Judgment Is Frivolous ........................................ 28

ii

CONCLUSION ................................................................................................ 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) ............................................................20

*AT&T Corp. v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005) ...............................................23

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ...............................................16

*Crown Fin. Corp. v. Winthrop Lawrence Corp.*,
  531 F.2d 76 (2d Cir.1976) ............................................ 13, 17

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................... 12, 13, 14, 15

*Hadges v. Yonkers Racing Corp.*,
  48 F.3d 1320 (2d Cir. 1995) ...............................................27

*Hussein v. Maait*,
  129 F.4th 99 (2d Cir. 2025) ................................................26

*In re Akron Beacon J.*,
  1995 WL 234710 (S.D.N.Y. Apr. 20, 1995) .......................14

*In re Bank of N.Y. Derivative Litig.*,
  320 F.3d 291 (2d Cir. 2003) ...............................................22

*In re Holocaust Victim Assets Litig.*,
  2014 WL 2440612 (E.D.N.Y. May 30, 2014).....................14

*Jolly v. Excelsior Coll.*,
  2023 WL 545086 (2d Cir. Jan. 27, 2023) ...........................31

*King v. First Am. Investigations, Inc.*,
  287 F.3d 91 (2d Cir. 2002) .................................................27

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ............................................................27

iv

*N.Y. News, Inc. v. Kheel*,
   972 F.2d 482 (2d Cir. 1992) ....................................................... *passim*

*NSI Int'l, Inc. v. Mustafa*,
   726 F.App'x 78 (2d Cir. 2018) ............................................................. 31

*Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K.*,
   339 F.3d 76 (2d Cir. 2003) ........................................................... 11, 15

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
   2025 WL 1073784 (S.D.N.Y. Mar. 3, 2025) ..................................... 5

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
   895 F.3d 194 (2d Cir. 2018) ..................................................... 5, 13, 26

*Argentine Republic v. Petersen Energia Inversora S.A.U.*,
   139 S.Ct. 2741 (2019) ................................................................. 5, 26

*Restor-A-Dent Dental Laboratories, Inc.*
   *v. Certified Alloy Prods., Inc.*,
   725 F.2d 871 (2d Cir. 1984) ............................................................... 21

*Rivera v. FDA*,
   346 F.App'x 693 (2d Cir. 2009) ........................................................ 31

*SEC v. Am. Bd. of Trade, Inc.*,
   830 F.2d 431 (2d Cir. 1987) ............................................................... 24

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2012) ................................................................ 26

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) ............................................................. 22

*Toliver v. Cnty. of Sullivan*,
   957 F.2d 47 (2d Cir. 1992) ................................................................ 24

*U.S.P.S. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ............................................................... 24

*United States v. Hooker Chems. & Plastics Corp.*,
   749 F.2d 968 (2d Cir. 1984) ............................................................... 23

*United States v. New York*,
  820 F.2d 554 (2d Cir. 1987) ................................................................19

*United States v. Peoples Benefit Life Ins. Co.*,
  271 F.3d 411 (2d Cir. 2001) ......................................................... 19, 20

*United States v. Pitney Bowes*,
  25 F.3d 66 (2d Cir. 1994) ...................................................................12

*United States v. Yonkers Bd. of Educ.*,
  801 F.2d 593 (2d Cir. 1986) ......................................................... 13, 14

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010)....................................................................... 25, 26

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) ................................................................ 22

**Rules**

Fed. R. App. P. 12.1(a) ............................................................... 12, 29

Fed. R. App. P. 12.1(b) ......................................................... 12, 29, 30

Fed. R. Civ. P. 24(a)(1)....................................................................18

Fed. R. Civ. P. 24(a)(2)....................................................................18

Fed. R. Civ. P. 24(b) .................................................................. 22, 23

Fed. R. Civ. P. 24(b)(1) .............................................................. 23, 24

Fed. R. Civ. P. 60(b)(6) ...................................................................26

Fed. R. Civ. P. 60(c)(1)............................................................... 26, 27

Fed. R. Civ. P. 60(d)(1) ...................................................................25

Fed. R. Civ. P. 60(d)(2) ...................................................................25

Fed. R. Civ. P. 60(d)(3) ...................................................................27

Fed. R. Civ. P. 62.1(a) .....................................................................29

Fed. R. Civ. P. 62.1(b) .....................................................................29

**Other Authorities**

Claudio Savoia, *Sorpresivo Giro en el Caso YPF* [*Surprising Twist in the YPF Case*], Notiar, perma.cc/7Y5H-BV38 (Feb. 23, 2025)..........................2

*Giro por YPF* [*Twist for YPF*], El Dia, perma.cc/3LVF-DR5R (Feb. 24, 2025).........................................................................................2

vii

## INTRODUCTION

In April 2012, Defendant-Appellees Argentine Republic ("Argentina") and YPF S.A. ("YPF") breached their clear contractual obligations to Plaintiffs-Appellees Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together "Petersen"), causing Petersen billions of dollars in damages. After nearly a decade of litigation, the district court entered judgment against Argentina in September 2023, and the parties' appeals from that judgment are pending before this Court. Those appeals have now been fully briefed for nearly a year and a proposed calendaring for oral argument has just been scheduled for October.

This appeal, by contrast, is a frivolous sideshow that can be disposed of without oral argument. In February 2025—nearly a year and a half after the district court entered its final judgment, and nearly six months after the parties finished briefing their appeals from that judgment—Appellant Republican Action for Argentina, Inc. ("RA4ARG") filed an *ex parte* letter to the district court seeking to intervene in the district court proceedings and to file a motion under Federal Rule of Civil Procedure 60 to vacate the judgment and order the Department of Justice to initiate a criminal investigation into the events leading up to that judgment. That filing was followed by an orchestrated media blitz in Argentina, apparently designed to suggest that RA4ARG's filing would mark a turning point in the case and support Argentina's refusal to satisfy the judgment. *See, e.g.*, Claudio Savoia, *Sorpresivo*

*Giro en el Caso YPF* [*Surprising Twist in the YPF Case*], Notiar, perma.cc/7Y5H-BV38 (Feb. 23, 2025); *Giro por YPF* [*Twist for YPF*], El Dia, perma.cc/3LVF-DR5R (Feb. 24, 2025).

After informing the parties and receiving their responses to RA4ARG's letter, the district court denied RA4ARG's motion to intervene, explaining that the motion was untimely, that RA4ARG had no cognizable interest in the litigation, and that the court had no jurisdiction to consider RA4ARG's Rule 60 motion in any event given the pending appeals from the underlying judgment. RA4ARG then filed this appeal of the district court's order denying its motion to intervene, which it followed with numerous other filings with this Court.

This appeal is governed by an abuse-of-discretion standard, and the district court came nowhere near abusing its discretion in denying RA4ARG's belated and frivolous motion to intervene. This Court should affirm. As the district court explained, RA4ARG's motion—filed not only well after the court entered final judgment, but even after the parties had fully briefed their appeals from that judgment—was obviously untimely, and this Court can affirm on that ground alone. The district court also correctly concluded that RA4ARG has no cognizable interest in this litigation, and RA4ARG does not satisfy the other requirements for intervention as of right either. RA4ARG likewise cannot show that this is the vanishingly rare case in which a court might abuse its broad discretion in denying

permissive intervention.  On top of all that, the Rule 60 motion that underlies RA4ARG's intervention motion is itself jurisdictionally barred and clearly meritless, providing yet another independent basis for affirming.

Finally, this Court should deny RA4ARG's frivolous request to remand the pending appeals from the district court's judgment—to which RA4ARG is not even a party—to allow the district court to rule on RA4ARG's meritless Rule 60 motion. That procedure is not available here, because the district court (understandably) has never suggested that it would grant RA4ARG's Rule 60 motion or even that the motion raises a substantial issue, and RA4ARG cites no authority for its position that it can seek remand of appeals in which it is not a party.  In any event, it would make no sense to remand the pending appeals from the district court's judgment, which are fully briefed, have been awaiting oral argument for nearly a year, and are now expected to be argued in October, just to allow the district court to rule on RA4ARG's meritless Rule 60 motion.  This Court should affirm the district court's order denying RA4ARG's motion to intervene and should admonish RA4ARG against any further frivolous filings.

## JURISDICTION

The district court had jurisdiction over this case pursuant to 28 U.S.C. §§1330 and 1367(a).  It entered final judgment on September 15, 2023.  *See* Supp.App.95.[1] Seventeen months later, RA4ARG filed its motion to intervene, which the district court denied on March 3, 2025.  Supp.App.223.  RA4ARG appealed that denial on March 10, 2025.  Supp.App.226.  This Court has jurisdiction over this appeal under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1. Whether the district court properly denied RA4ARG's motion to intervene, which RA4ARG filed seventeen months after the district court entered final judgment and which provided no plausible basis for intervention as of right or permissive intervention.

2. Whether this Court should deny RA4ARG's request to remand separate appeals to which it is not a party to permit a ruling on RA4ARG's meritless Rule 60 motion, where the district court never stated that it would grant that motion or that the motion raises a substantial issue.

---

[1] Because RA4ARG did not file a joint appendix in compliance with Federal Rule of Appellate Procedure 30, Petersen is filing a supplemental appendix under Second Circuit Rule 30.1(g).  Citations to "Supp.App." refer to that supplemental appendix.

## STATEMENT OF THE CASE

This appeal challenges the decision of the district court (Preska, J.) denying RA4ARG's post-judgment motion to intervene. *See Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 2025 WL 1073784 (S.D.N.Y. Mar. 3, 2025).

The proceedings below arise from a suit filed by Petersen in April 2015 against Argentina and YPF for their breach of their contractual obligations under YPF's bylaws in connection with Argentina's seizure of control and eventual expropriation of a majority stake in YPF in April 2012. *See* Supp.App.1.[2] A parallel suit was filed against Argentina and YPF by Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. (together "Eton Park") in November 2016, and the cases proceeded in tandem. The district court denied Argentina's and YPF's attempt to claim sovereign immunity, this Court affirmed, and the Supreme Court denied certiorari. *See Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 895 F.3d 194 (2d Cir. 2018), *cert. denied*, 139 S.Ct. 2741 (2019). On March 31, 2023, the district court granted summary judgment for Petersen and Eton Park against Argentina on liability, but granted summary judgment for YPF. Supp.App.31-94.  The case against Argentina proceeded to a three-day trial in July

---

[2] The full factual background and procedural history of the district court proceedings below is set forth in detail in Petersen's opening brief in *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 23-7370 (2d Cir. filed Sept. 6, 2024) (Dkt.226).

2023, and the district court entered its judgment on September 15, 2023, awarding Petersen and Eton Park approximately $16.1 billion in damages.  Supp.App.95-98.

Argentina appealed the judgment against it to this Court; its appeal as to Petersen is docketed as No. 23-7370, and its appeal as to Eton Park is No. 23-7376. Petersen and Eton Park cross-appealed the district court's grant of summary judgment as to YPF and dismissal of their promissory estoppel claims; Petersen's cross-appeal is docketed as No. 23-7463, and Eton Park's cross-appeal is docketed as No. 23-7471.  YPF conditionally cross-appealed, giving rise to Nos. 23-7614 and 23-7667.  While Argentina originally sought a stay of the damages judgment against it, it refused to comply with the district court's stay conditions and did not even seek a stay from this Court.  *See* Supp.App.99-103.  Despite having an unstayed damages judgment against it, Argentina took full advantage of the generous briefing deadlines available under this Court's rules (and additional extensions) and thereby extended the briefing to last for nearly a year.  Briefing in all of the appeals was completed in August 2024, and this Court recently issued a proposed calendaring for oral argument for late October.[3]

---

[3] On June 30, 2025, the district court entered a turnover order requiring Argentina to turn over its shares in YPF to Petersen's and Eton Park's designees in partial satisfaction of the judgment.  *See* Supp.App.229-61.  Argentina's appeals from that order are pending in Nos. 25-1687 and 25-1689.

On February 19, 2025—well over a year after the district court entered its final judgment, and five and a half months after the briefing in the parties' appeals from that judgment was complete—the district court notified the parties that it had received an *ex parte* letter from Fernando G. Irazu as President of RA4ARG. Supp.App.105. The attachments to that letter included a document styled as an *ex parte* motion on behalf of RA4ARG to intervene in the district court proceedings, and another styled as an *ex parte* motion under Rule 60 to:

> (i) order the Department of Justice (DOJ) and any other relevant agencies to initiate a formal criminal investigation at the international level of the facts and parties highlighted in the accompanying Memorandum of Law; (ii) stay these legal proceedings pending of such side criminal investigation as well as eventual indictments and prosecution; and (iii) timely vacate the $16.1 billion plus award against the Republic of Argentina … due to institutional interests and concerns in light of international criminal activity unduly impacting the US legal system.

Supp.App.165-66; *see* Supp.App.126-47, 165-93.

As well as notifying the parties of these *ex parte* communications by RA4ARG, the district court allowed the parties to submit letters to "inform the Court … of their views as to what action, if any, the Court should take in response." Supp.App.105. Petersen and Eton Park responded that the court should construe the *ex parte* submissions as a motion to intervene and deny the motion, and also noted that the court lacked jurisdiction to grant RA4ARG's purported Rule 60 motion in any event in light of the pending appeals. Supp.App.196-98. Argentina filed a response that did not suggest any specific course of action for the district court but

7

disclaimed knowledge of RA4ARG or its intentions.  Supp.App.199-200.  Without waiting for the district court to act, RA4ARG proceeded to file a purported amended Rule 60 motion and memorandum in support, seeking the same relief described above.  *See* Supp.App.204-22.

The district court entered an order construing RA4ARG's submissions as a motion to intervene and denying them.  Supp.App.223-25.  As the district court explained, "RA4ARG's motion is untimely, and, pursuant to Rule 24(a), RA4ARG has no cognizable interest in the litigation."  Supp.App.224.  "Additionally, permissive intervention under Rule 24(b) is unwarranted," the court reasoned, "because RA4ARG does not assert a claim or defense and none of the legal or factual determinations made in the Court's judgment on the merits affects any right or entitlement claimed by RA4ARG."  Supp.App.224-25.  In addition, the district court noted that "[e]ven if the Court granted RA4ARG's motion to intervene, the Court lacks jurisdiction to grant the relief that RA4ARG seeks [in its Rule 60 motion] due to the pending appeal."  Supp.App.225.  RA4ARG filed a notice of appeal from the district court's order, initiating the present appeal.  Supp.App.226-27.

On March 27, 2025, RA4ARG filed a letter to this Court that cited Federal Rule of Appellate Procedure 12.1 and appeared to ask this Court to remand the separate pending appeals in Nos. 23-7370, 23-7376, 23-7463, 23-7471, 23-7614, and 23-7667 from the district court's underlying judgment.  Dkt.17.  Petersen responded

to that letter on April 7, 2025, explaining that RA4ARG's apparent request to remand those separate appeals under Rule 12.1 is both inappropriate and frivolous because RA4ARG is not even a party to those separate appeals, and in any event the district court did not "state[] that it would grant [RA4ARG's Rule 60] motion or that the motion raises a substantial issue"—a requirement of Rule 12.1(b).  *See* Dkt.35.

Undeterred, RA4ARG filed a motion on April 13, 2025, apparently seeking to either stay the separate pending appeals in Nos. 23-7370, 23-7376, 23-7463, 23-7471, 23-7614, and 23-7667 or to remand them under Rule 12.1.  Dkt.36.  Petersen responded to that motion on April 22, 2010, explaining (again) that RA4ARG's request to remand is both inappropriate and frivolous, and that its request to stay those appeals is equally frivolous because RA4ARG is not a party to those appeals and concedes that they raise no "simultaneous or overlapping" issues with its current appeal.  Dkt.38.  Accordingly, Petersen asked this Court to deny RA4ARG's motion and "warn RA4ARG against further frivolous filings that unnecessarily burden the parties and the Court."  *Id.* at 6.  RA4ARG has since filed a reply repeating the same frivolous arguments.  Dkt.39.  Its motion remains pending.

## SUMMARY OF ARGUMENT

The district court did not remotely abuse its discretion in denying RA4ARG's motion to intervene.  As the district court explained, that  motion—filed nearly a year and a half after the district court entered final judgment, and nearly six months

9

after the parties had fully briefed their appeals—was radically untimely. RA4ARG has no persuasive response to the district court's finding of untimeliness, and this Court can affirm on that ground alone.

If more is needed, the district court also did not abuse its discretion in finding that RA4ARG is not entitled to intervention as of right and should not be granted permissive intervention. As to the former, the district court correctly concluded that RA4ARG has no cognizable interest in this litigation. The only interest that RA4ARG asserts is a generic interest in avoiding the burden that it claims the judgment here will impose on "the Argentinean people"; finding that interest sufficient would give every taxpayer in Argentina the right to intervene in this litigation, as well as every other organization that claims to represent them. Needless to say, that is not the law. RA4ARG also cannot show that any interest it has in this case is not adequately represented by Argentina itself, which indisputably shares RA4ARG's interest in having the judgment vacated. Nor can RA4ARG show that the district court abused its broad discretion in denying RA4ARG permissive intervention, given that RA4ARG does not assert any claim or defense in the underlying litigation and none of the legal or factual determinations made in the judgment affect RA4ARG's rights. And RA4ARG's reason for seeking intervention is to file a Rule 60 motion that is both jurisdictionally barred and utterly meritless,

10

providing yet another independent basis for affirming the district court's decision to deny intervention.

Finally, RA4ARG's request that this Court remand the pending appeals from the district court's judgment so that the district court can rule on its Rule 60 motion is frivolous. Rule 12.1 does not apply here, because the district court (quite correctly) has never stated that it would grant RA4ARG's Rule 60 motion or that it raises a substantial issue. And even if the district court had taken that position, RA4ARG cites no authority holding that it should be permitted to seek remand under Rule 12.1 of appeals to which it is not even a party. In any event, it would be wholly inefficient to remand the pending merits appeals—which have been fully briefed for nearly a year—just to allow the district court to rule on RA4ARG's meritless Rule 60 motion. This Court should affirm the district court's order denying RA4ARG's motion to intervene, deny RA4ARG's request for remand under Rule 12.1, and admonish RA4ARG against further frivolous filings.

## STANDARD OF REVIEW

A district court's decision denying a motion to intervene as of right or by permission is reviewed for abuse of discretion. *Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 80 (2d Cir. 2003).

This Court may remand a pending appeal for further proceedings "[i]f a timely motion is made in the district court for relief that it lacks authority to grant" because

of a pending appeal, and "the district court states that it would grant the motion or that the motion raises a substantial issue." Fed. R. App. P. 12.1(a)-(b).

## ARGUMENT

### I.    The District Court Did Not Abuse Its Discretion In Denying RA4ARG's Motion To Intervene.

The district court clearly did not abuse its discretion in denying RA4ARG's motion to intervene. As the district court explained, RA4ARG's motion was untimely; RA4ARG has no cognizable interest in this litigation that could warrant intervention as of right, and asserts no claim or defense that could warrant permissive intervention; and seeks relief that the district court could not award and that is plainly unwarranted in any event. This Court should swiftly affirm.

### A.    The District Court Did Not Abuse Its Discretion in Finding That RA4ARG's Motion Was Untimely.

Whether a motion to intervene is timely is a question "within the discretion of the district court" and "evaluated against the totality of the circumstances before the court." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). Relevant circumstances include: "(1) how long the applicant had notice of [its] interest before [it] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.* (quoting *United States v. Pitney Bowes*, 25 F.3d 66, 70 (2d Cir. 1994)). In light of those considerations, "post-judgment intervention … is generally disfavored because it

12

usually creates delay and prejudice to existing parties and undermines the orderly administration of justice." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (citations omitted); *see Crown Fin. Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir.1976) (per curiam) (post-judgment intervention "is unusual and not often granted").

The district court here was plainly correct—and certainly did not abuse its discretion—in concluding that RA4ARG's post-judgment motion to intervene was untimely. RA4ARG filed its motion nearly a decade after this suit originally commenced, *see* Supp.App.1; nearly seven years after this Court ruled on Argentina's and YPF's previous appeal, *see Petersen*, 895 F.3d at 194; nearly two years after the district court decided the parties' motions for summary judgment, *see* Supp.App.31; and seventeen months after the district court entered its final judgment, *see* Supp.App.95. Indeed, the parties' *briefing on appeal* from that final judgment had already been complete for more than five months before RA4ARG finally sought intervention. *See supra* pp.1-2. Under these circumstances, the district court was well within its discretion to conclude that RA4ARG's extraordinarily belated motion to intervene was untimely. *See, e.g.*, *D'Amato*, 236 F.3d at 84 (motion to intervene filed "more than a year after the complaint was filed" was untimely).

The relevant factors confirm the point. First, RA4ARG does not dispute that it "had notice of" its purported interest in this nearly-decade-old litigation long before it sought to intervene—indeed, apparently ever since RA4ARG itself was established in March 2024, nearly a year before it filed its motion. *Id.*; *see* Br.30. Second, allowing RA4ARG to intervene at this point and seek to undo a final judgment that was entered more than a year earlier, and that is already fully briefed on appeal and awaiting oral argument, would plainly cause severe "prejudice to existing parties" by disrupting and delaying the appellate process and laying waste to extensive and costly briefing. *D'Amato*, 236 F.3d at 84; *see, e.g.*, *In re Holocaust Victim Assets Litig.*, 2014 WL 2440612, at *7 (E.D.N.Y. May 30, 2014) (finding post-judgment motion to intervene untimely where intervention would force the parties into "yet another round of time consuming litigation that is costly to the judicial process"); *In re Akron Beacon J.*, 1995 WL 234710, at *7 (S.D.N.Y. Apr. 20, 1995) ("[I]ntervention should not work a last minute disruption of painstaking work by the parties and the court."); *see also Yonkers*, 801 F.2d at 596 (recognizing that post-judgment intervention "usually creates delay and prejudice to existing parties and undermines the orderly administration of justice" (citations omitted)). Third, any "prejudice to [RA4ARG] if the motion is denied" is minimal at best, given RA4ARG's own lengthy delay and the fact that its purported interest is adequately represented by Argentina itself. *D'Amato*, 236 F.3d at 84; *see infra* pp.21-22.

14

Finally, the "unusual circumstances" here—especially the long history of this litigation and the patent frivolousness of RA4ARG's arguments—militate strongly "against a finding of timeliness." *D'Amato*, 236 F.3d at 84; *see infra* pp.18-28. In short, the district court's determination that RA4ARG's motion was untimely was plainly correct, and certainly well within the "range of permissible decisions." *Patricia Hayes*, 339 F.3d at 80.

RA4ARG has no meaningful response. It frames its question on appeal as whether the district court "appl[ied] the correct caselaw" by relying on this Court's decision in *D'Amato*. Br.30. The answer to that question is plainly yes; *D'Amato* sets out the standard for whether a motion to intervene is timely and what factors are relevant in applying that standard, *see* 236 F.3d at 84, and RA4ARG presents nothing to suggest that *D'Amato* has been overruled or superseded by any subsequent decision. Instead, RA4ARG asserts that *D'Amato* has "absolute inapplicability to the case at hand" because "[t]he facts of *D'Amato* … dealt with tragedies and grievances related to the Nazi regime," and Argentina is not Nazi Germany. Br.33-36. But while the facts of *D'Amato* are unquestionably different, the controlling legal principle is the same: A motion to intervene that is filed well after the litigation begins and that would prejudice the existing parties is untimely and must be denied. *D'Amato*, 236 F.3d at 84; *see* Supp.App.224.

15

RA4ARG's other arguments are equally unavailing. It contends that it "did not exist during the underlying proceedings" that led up to the district court's September 2023 final judgment. RA4ARG cites no case suggesting that a newly-formed entity is automatically entitled to seek intervention in any pending litigation, and any such rule would be particularly unjustified when it comes to artificial entities, like RA4ARG, which can be formed at any time. Providing an exception to the timeliness requirements for any individual who establishes a non-profit corporation or *ad hoc* coalition has nothing to recommend it. Of course, even if there were an exception for newly formed entities, RA4ARG's papers are bereft of any explanation for why it failed to seek intervention at any point in the eleven months between its formation in March 2024 and its eventual motion to intervene in February 2025. Br.31; *see Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (movant's "failure to act promptly weighs against it in the timeliness calculus").[4]

RA4ARG asserts that the issues it seeks to raise have not been presented by any other party, Br.31, but does not explain how that is relevant to the timeliness analysis. It would make little sense to favor untimely intervention by entities seeking

---

[4] RA4ARG states that it only obtained tax-exempt status in the United States in December 2024, Br.30, but does not explain why it would need tax-exempt status to file a motion to intervene.

to raise issues that were too tertiary or frivolous to be raised by the parties. RA4ARG asserts that the arguments it seeks to raise could not have been presented earlier by Argentina, because they accuse former Argentine officials of criminality, *see* Br.31; but even accepting that assertion on its face (and even assuming its relevance to the timeliness of RA4ARG's motion to intervene), RA4ARG does not explain why the current Argentine administration would be unable to raise those arguments now if they were meritorious. In short, RA4ARG's assertion that it "is doing what only [RA4ARG] can do" by seeking to have the judgment set aside is simply incorrect. Br.31.

Finally, RA4ARG asserts that it could not seek relief under Rule 60 until after the district court entered its judgment. Br.36-37. Of course, RA4ARG was not formed until after the district court entered its judgment—and yet still waited eleven months after its formation before *either* moving to intervene *or* seeking relief under Rule 60. *See supra* p.16. In any event, whether RA4ARG could move to intervene does not depend on whether it could also simultaneously move for relief under Rule 60; on the contrary, a proposed intervenor is normally expected to seek intervention *before* final judgment, and post-judgment motions to intervene are "unusual and not often granted," *Crown Fin. Corp.*, 531 F.2d at 77. The timing of the district court's judgment thus only underscores that the district court did not abuse its discretion in

17

denying RA4ARG's motion to intervene as untimely, and this Court can affirm on that basis alone.

### B. The District Court Did Not Abuse Its Discretion in Finding That RA4ARG Was Not Entitled to Intervention as of Right or Permissive Intervention.

Even if RA4ARG had sought intervention in a timely fashion, the district court did not abuse its discretion in concluding that RA4ARG had not shown adequate grounds for either intervention as of right or permissive intervention. That provides an independent basis for affirming the district court's decision.

#### 1. The district court did not abuse its discretion in finding that RA4ARG was not entitled to intervention as of right.

Rule 24(a) provides for intervention as of right, "[o]n timely motion," by any person who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[5] To intervene as of right under Rule 24(a)(2), "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 485

---

[5] RA4ARG does not assert that it has been "given an unconditional right to intervene by a federal statute" under Rule 24(a)(1). Fed. R. Civ. P. 24(a)(1).

(2d Cir. 1992).  "Failure to satisfy any one of these requirements is sufficient grounds to deny the application."  *Id*. (quoting *United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987)).  As already explained, RA4ARG's motion was untimely, and so the district court's decision to deny intervention can be denied based on the first requirement alone.  *See supra* pp.12-18.  But even if this Court were to consider the remaining three requirements, RA4ARG fails each of them as well.

As to the second requirement—that the applicant "show an interest in the action," *Kheel*, 972 F.2d at 485—the district court correctly determined that RA4ARG "has no cognizable interest in the litigation" here.  Supp.App.224.  "For an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable."  *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001).  "An interest that is remote from the subject matter of the proceeding[s], or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."  *Id.*

RA4ARG shows no such cognizable interest here.  The only interest that it asserts in this litigation is the general interest of "the Argentinean people" in avoiding the underlying money judgment against Argentina because "no taxpayer[] monies should reward State-related corruption."  Br.35-36; *see* Br.37 (asserting "the [interest] of the Argentinean people not having to afford more than $16.1 billion fruit of government-related corruption"); Br.38 (interest in ensuring that "more than $16.1

19

billion must not burden the Argentinean people"). But like the "interest in a streamlined, abuse-free judicial system" that this Court considered in *Kheel*, RA4ARG's asserted interest in protecting the Argentinean people as a whole from the purported burden of a judgment caused by corrupt actions by the Argentine government is "not a significantly protectable interest within the meaning of Rule 24(a)(2)." 972 F.2d at 486. Just as a taxpayer (or an organization representing taxpayers) has no "legally cognizable interest" in challenging government expenditures, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (explaining "the rule against taxpayer standing"), RA4ARG has no legally cognizable interest in protecting "the Argentinean people" as a whole from any burden imposed by the underlying judgment against Argentina here, *contra* Br.37. Indeed, any contrary holding would imply that *every Argentine taxpayer* (and any organization claiming to represent their interests) would be entitled to seek intervention as of right in this litigation, which plainly is not the law. Needless to say, any interest that an Argentine taxpayer might have in avoiding whatever future tax increases Argentina might conceivably choose to impose to cover the costs of paying the judgment—if and when Argentina eventually does pay the judgment—is far too "remote from the subject matter of the proceeding[s]" and "contingent upon the occurrence of a sequence of events" to entitle RA4ARG to intervention as of right. *Peoples Benefit*, 271 F.3d at 415.

RA4ARG briefly suggests that the district court "resorted to the wrong precedent," Br.37, by relying on this Court's decision in *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir. 1984), in finding that RA4ARG had no cognizable interest here, *see* Supp.App.224.  But RA4ARG provides no explanation for what might be wrong about the district court's reliance on *Restor-A-Dent*, which remains good law, and which stands for the principle that the interest required for intervention as of right under Rule 24(a)(2) "must be direct, as opposed to remote or contingent."  725 F.2d at 874.  As the district court correctly concluded, that principle forecloses RA4ARG's attempt at intervention as of right here.  Supp.App.224.  Nor is *Restor-A-Dent* some outlier.  Our system is premised on the idea that an American taxpayer cannot challenge every expenditure that she thinks is unjust or corrupt.  The same is true of paying judgments for prior actions viewed as unjust or corrupt.  The rule is no different for Argentine taxpayers.

For much the same reasons, RA4ARG cannot satisfy the third or fourth requirements of intervention as of right either.  Absent a cognizable interest in this litigation, RA4ARG cannot show that any such interest would be "impaired by the disposition of the action."  *Kheel*, 972 F.2d at 485.  And because RA4ARG's only asserted interest is in seeking to prevent the judgment against Argentina from "burden[ing] the Argentinean people," Br.38, it also cannot show that its interest "is

21

not protected adequately by the parties to the action," *Kheel*, 972 F.2d at 485. Argentina has vigorously litigated against Plaintiffs' claims at every step of this case, and has every incentive to continue vigorously challenging the district court's judgment on appeal. Because both Argentina and RA4ARG share the same interest in invalidation of the district court's judgment, their "identity of interest" confirms that "adequate representation is assured," and RA4ARG cannot satisfy the fourth requirement for intervention as of right. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990).[6]

> ## 2. The district court did not abuse its discretion in finding that RA4ARG was not entitled to permissive intervention.

The district court likewise did not abuse its discretion in denying RA4ARG permissive intervention. Under Rule 24(b), "[o]n timely motion," a court "may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b); *see Kheel*, 972 F.2d at 487. A district court has "broad discretion" when considering permissive

---

[6] Again, while RA4ARG asserts that the issues that it seeks to raise could not previously have been asserted by Argentina because they accuse former Argentine officials of criminality, Br.31, it does not explain why the current Argentine administration could not present those issues if they had any merit. *See supra* pp.16-17. In any event, the fact that the parties in the action "have chosen a slightly different strategy and have raised slightly different claims" does not demonstrate that a proposed intervenor's interests will not be adequately protected. *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 301 (2d Cir. 2003); *see also Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013) ("[D]isagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy.")

intervention, and appellate review of that decision is "particularly deferential." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). In fact, "[a] denial of permissive intervention has virtually never been reversed." *Id.* (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 990 n.19 (2d Cir. 1984)).

Under that deferential standard, the district court certainly did not abuse its discretion in denying RA4ARG permissive intervention. As already explained (and as the district court recognized), RA4ARG's motion was untimely, which is itself sufficient to affirm the denial of permissive intervention. *See* Fed. R. Civ. P. 24(b) (requiring a "timely motion"); *see also* Supp.App.224; *supra* pp.12-18. RA4ARG also "does not assert a claim or defense" in the underlying litigation, and "none of the legal or factual determinations made in the Court's judgment on the merits affects any right or entitlement claimed by RA4ARG." Supp.App.225; *see* Fed. R. Civ. P. 24(b)(1)(B) (permissive intervention requires "a claim or defense that shares with the main action a common question of law or fact"); *cf.* Br.12 (admitting that RA4ARG's "new arguments in no way, shape or form overlap, replace, and/or superpose with those argued by the Defendants within the ordinary appeal process"). And the "prejudice to the parties could have been substantial" from allowing permissive intervention, by reopening the proceedings below and forcing the parties to endure further meritless litigation years after the district court entered its final judgment. *Kheel*, 972 F.2d at 487. In short, RA4ARG cannot remotely show that

this is the extraordinarily rare case in which a district court could abuse its discretion by denying permissive intervention. *See U.S.P.S. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978) ("[W]e have not found a single case in which a denial of permissive intervention under Rule 24(b) was reversed solely for an abuse of discretion. We see no reason to start with this case.").[7]

### C. The District Court Did Not Abuse Its Discretion in Finding That It Could Not Afford the Relief That RA4ARG Seeks.

Finally, the district court also did not abuse its discretion in denying RA4ARG's motion to intervene because it could not grant RA4ARG's meritless Rule 60 motion in any event. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 443 (2d Cir. 1987) (district court is "not required to grant leave to intervene to file" pleadings that are "clearly meritless"). As the district court explained, it "lack[ed] jurisdiction to grant the relief that RA4ARG seeks due to the pending appeal" from its underlying judgment. Supp.App.225; *see Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (explaining that a pending appeal "ousts the district court of jurisdiction" to grant a Rule 60 motion). The district court did not abuse its

---

[7] RA4ARG puts forward a conclusory assertion that it "does have a 'claim or defense that shares with the main civil action a common question of law or fact,'" but makes no attempt to explain what that claim or defense might be. Br.41 (emphasis omitted) (quoting Fed. R. Civ. P. 24(b)(1)(B)). That does not come close to showing that the district court abused its discretion.

24

discretion by refusing to allow RA4ARG to intervene to file a Rule 60 motion that the court had no jurisdiction to grant.

And even if the district court could have somehow obtained jurisdiction to consider RA4ARG's Rule 60 motion, that motion was still "clearly meritless," and so the court did not abuse its discretion in declining to allow RA4ARG to intervene to file it.  According to RA4ARG, its Rule 60 motion seeks relief under Rule 60(b)(4), 60(b)(6), and 60(d)(3).  Br.43-66.[8]  Its arguments under each subsection are entirely frivolous.

First, RA4ARG contends that the district court's judgment is "void" under Rule 60(b)(4).  Br.45-50.  But as the Supreme Court has explained, Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).  RA4ARG does not assert that Argentina (or any other party) was denied notice or the opportunity to be heard; instead, it appears to assert that the district court lacked jurisdiction because Argentina was entitled to sovereign

---

[8] RA4ARG actually cites Rule 60(d)(1)-(3), *see* Br.57, but Rule 60(d)(1) and Rule 60(d)(2) are plainly inapplicable.  *See* Fed. R. Civ. P. 60(d)(1) (allowing "an independent action to relieve a party from a judgment, order, or proceeding"); *id.* 60(d)(2) (allowing "relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action").

25

immunity under this Court's recent decision in *Hussein v. Maait*, 129 F.4th 99 (2d Cir. 2025). *See* Br.47-50. Relief under Rule 60(b)(4) based on a jurisdictional defect, however, is available "only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *Espinosa*, 559 U.S. at 271. That plainly is not this case, given that this Court has already held that Argentina is not entitled to sovereign immunity here, *see Petersen*, 895 F.3d at 205-12, the Supreme Court has already denied review of that holding, *see* 139 S.Ct. 2741, and RA4ARG makes no attempt to explain how *Hussein* (which examined whether a foreign state was the real party in interest in a suit against a foreign official) would have any effect on that holding. Moreover, RA4ARG's attempt to seek relief under Rule 60(b)(4) is also barred under Rule 60(c)(1), since its Rule 60 motion was not made within a "reasonable time" after the judgment. Fed. R. Civ. P. 60(c)(1); *see supra* pp.12-18.

Second, RA4ARG's attempt to seek relief under Rule 60(b)(6)—which authorizes a district court to grant relief from a judgment for "any other reason that justifies relief"—fails for similar reasons. Fed. R. Civ. P. 60(b)(6). While Rule 60(b)(6) provides "a grand reservoir of equitable power to do justice in a particular case that reservoir is not bottomless." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citation omitted). Instead, "courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief." *Id.*

(quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). RA4ARG shows no such extraordinary circumstances here; instead, it simply repeats its accusations of sweeping corruption. Br.51-57. And again, RA4ARG's attempt to seek relief under Rule 60(b)(6) is barred under Rule 60(c)(1), since its motion was not made within a "reasonable time" after the judgment. Fed. R. Civ. P. 60(c)(1); *see supra* pp.12-18.

Finally, RA4ARG likewise comes nowhere near showing that relief is warranted under Rule 60(d)(3), which preserves a court's authority to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3); *see* Br.57-66. Fraud upon the court "must be established by clear and convincing evidence," and "is limited to fraud which seriously affects the integrity of the normal process of adjudication." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002). It covers "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Id.* (quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995)); *see* Br.58-59 (recognizing that Rule 60(d)(3) applies only in "egregious cases" where "the integrity of the court and its ability to function impartially is directly impinged" (emphasis omitted)). RA4ARG does not meaningfully allege anything of the sort, let alone demonstrate it by clear and convincing evidence. To the extent its assertions can be understood

27

at all, they provide no basis to believe that the district court's judgment was obtained through any fraud on the court. RA4ARG's motion therefore clearly fails as a matter of law under Rule 60(d)(3) as well, and the district court did not abuse its discretion in refusing to permit RA4ARG to file it.

## II.    RA4ARG's Motion To Remand The Pending Appeals From The District Court's Judgment Is Frivolous.

RA4ARG also asks this Court to remand the district court's underlying judgment—from which appeals are pending before this Court in Nos. 23-7370, 23-7376, 23-7463, 23-7471, 23-7614, and 23-7667—under Rule 12.1, to permit the district court to decide RA4ARG's Rule 60 motion. *See* Br.42-43 (asking this Court to "remand the core final judgment of the District Court" for decision on RA4ARG's "encompassing request for relief" under Rule 60); Br.68 (asking this Court to "remand the case to the District Court for the vacatur of its $16.1 billion award …pursuant to" Rule 60 and "FRAP Rule 12.1"); *see also* Dkt.17, 36 (prior requests by RA4ARG for the same relief). That request is frivolous. As Petersen has already explained, Rule 12.1 does not apply here. *See* Dkt.35, 38. And even if it did, it would be the height of judicial inefficiency to further delay the pending appeals from the district court's judgment—which are fully briefed and have been awaiting oral argument for nearly a year—just to allow the district court to rule on RA4ARG's meritless Rule 60 motion. *See* Dkt.38 at 5-6; *supra* pp.8-9.

28

Despite citing Rule 12.1 and Federal Rule of Civil Procedure 62.1 as the legal grounds for its request, *see* Br.42-43, 68, RA4ARG makes no attempt whatsoever to explain in its brief how those rules could possibly authorize the remand it seeks. That is because they do not permit that relief here.  Under Rule 62.1, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a).  If the district court takes the third option—i.e., if it "states that it would grant the motion or that the motion raises a substantial issue"— then "[t]he movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1."  *Id.* 62.1(b).  In turn, Rule 12.1 provides that "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue," this Court "may remand for further proceedings."  Fed. R. App. P. 12.1(b).

That procedure is entirely inapposite in this case.  Although RA4ARG did file a purported Rule 60(b) motion in the district court seeking "relief that [the district court] lacks authority to grant" because of the pending appeals from the district court's judgment, the district court did not "state[] that it would grant the motion or that the motion raises a substantial issue."  *Id.* 12.1(a).  That is hardly surprising,

29

given that RA4ARG's Rule 60 motion is plainly meritless.  *See supra* pp.25-28.  Instead of stating that it would grant RA4ARG's Rule 60 motion, the district court denied RA4ARG's motion to intervene because "RA4ARG's motion is untimely," "RA4ARG has no cognizable interest in the litigation," and "RA4ARG does not assert a claim or defense and none of the legal or factual determinations made in the Court's judgment on the merits affects any right or entitlement claimed by RA4ARG." Supp.App.224-25.  Because that denial of intervention independently bars RA4ARG's (meritless) Rule 60 motion, and because the district court did not "state[] that it would grant the [Rule 60 motion] or that the motion raises a substantial issue," Fed. R. App. P. 12.1(b), remand under Rule 12.1 is unavailable here—especially insofar as RA4ARG is apparently asking this Court to remand appeals as to which RA4ARG is not even a party (i.e., the appeals in Nos. 23-7370, 23-7376, 23-7463, 23-7471, 23-7614, and 23-7667).

Despite being fully aware of these flaws in its request for a remand under Rule 12.1, *see* Dkt.35, 38, RA4ARG offers no response at all.  It does not dispute that the district court has never "state[d] that it would grant [RA4ARG's Rule 60 motion] or that the motion raises a substantial issue," which forecloses any attempt to seek a remand under Rule 12.1. Fed. R. App. P. 12.1(b).  Nor does RA4ARG cite any authority even remotely suggesting that it should be permitted to invoke Rule 12.1 to seek remand of appeals in which it is not even a party, especially where the district

court has already denied RA4ARG's untimely intervention request. In light of RA4ARG's continued insistence on pressing arguments with no factual or legal support, this Court should admonish RA4ARG against further frivolous filings that unnecessarily burden the parties and the Court. *See, e.g.*, *Jolly v. Excelsior Coll.*, 2023 WL 545086, at *2 (2d Cir. Jan. 27, 2023) (summary order) ("We therefore take this opportunity to warn Jolly that frivolous or duplicative litigation runs the risk of sanctions, and may lead to a filing injunction restricting her ability to file without obtaining prior leave."); *NSI Int'l, Inc. v. Mustafa*, 726 F.App'x 78, 79 (2d Cir. 2018) (summary order) (warning that "any future frivolous or vexatious appeals, motions, or other filings may result in sanctions, including imposition of a leave-to-file sanction"); *Rivera v. FDA*, 346 F.App'x 693, 694 (2d Cir. 2009) (summary order) ("[W]e warn Rivera that the filing of frivolous appeals, motions, petitions or other documents in the future may result in the imposition of monetary sanctions or the requirement that he obtain permission of the Court before making future filings."); *see also* Dkt.38 at 6.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order denying intervention, deny RA4ARG's request for a remand under Rule 12.1 of the appeals from the district court's judgment, and warn RA4ARG against any further frivolous filings.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

August 4, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1(a)(4)(A) because it contains 7,625 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

August 4, 2025

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that, on August 4, 2025, an electronic copy of the foregoing brief was filed with the Clerk of Court using the ACMS system and thereby served upon all counsel appearing in this case.


s/Paul D. Clement
Paul D. Clement