# 25-576

## In the United States Court of Appeals for the Second Circuit

PETERSEN ENERGIA INVERSORA S.A.U., PETERSEN ENERGIA S.A.U.,
*Plaintiffs-Appellees*,

v.

ARGENTINE REPUBLIC, YPF S.A.,
*Defendants-Appellees*,

v.

REPUBLICAN ACTION FOR ARGENTINA, INC.,
*Interested Party-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York
(No. 1:15-cv-02739) (Hon. Loretta A. Preska)

## RESPONSE BRIEF FOR
## DEFENDANT-APPELLEE THE ARGENTINE REPUBLIC

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500
davidoffa@sullcrom.com

Robert J. Giuffra, Jr.
Sergio Galvis
Adam R. Brebner
Pedro José Izquierdo
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

*Attorneys for the Argentine Republic*

## CORPORATE DISCLOSURE STATEMENT

The Argentine Republic is a governmental party not required to file a corporate disclosure statement under Federal Rule of Appellate Procedure 26.1.

# TABLE OF CONTENTS

*Page*

**CORPORATE DISCLOSURE STATEMENT**......................................................i

**INTRODUCTION**.................................................................................1

**JURISDICTIONAL STATEMENT** ...........................................................3

**STATEMENT OF THE ISSUE** ...............................................................3

**STATEMENT OF THE CASE** ................................................................3

**SUMMARY OF ARGUMENT** ...............................................................8

**STANDARD OF REVIEW** .....................................................................8

**ARGUMENT** .......................................................................................8

**CONCLUSION**....................................................................................14

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Animal Sci. Prods., Inc.* v. *Hebei Welcome Pharm. Co.*,
  585 U.S. 33 (2018) ................................................................................5

*New York News, Inc.* v. *Kheel*,
  972 F.2d 482 (2d Cir. 1992) ................................................................8

*Thomas* v. *City of New York*,
  293 F.R.D. 498 (S.D.N.Y. 2013) ..................................................13, 14

**U.S. Statutes**

28 U.S.C. § 1291 .................................................................................3

**Rules**

Fed. R. Civ. P. 60 .............................................................................14

## INTRODUCTION

This appeal challenges the denial of a post-judgment intervention motion. The underlying case is *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, No. 1:15-cv-02739 (S.D.N.Y.), a purported breach-of-contract suit against the Argentine Republic (the "Republic") brought by Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen"). The Eskenazi family, which is based in Argentina, created these special-purpose vehicles in Spain to invest in Argentine energy company YPF S.A. ("YPF"). On September 15, 2023, the district court entered a $14.39 billion judgment against the Republic in *Petersen*. This unprecedented judgment rests on a series of fundamental errors under governing Argentine law, the doctrines of *forum non conveniens* and international comity, and New York's Judiciary Law. The *Petersen* judgment is separately on appeal in this Court, *see Petersen Energía Inversora, S.A.U.* v. *Argentine Republic*, Nos. 23-7370, 23-7463, 23-7614, and argument has been proposed for the week of October 27, 2025.

This appeal is distinct from the pending appeal in *Petersen*. Here, proposed intervenor Republican Action for Argentina, Inc. ("RA4ARG"), a non-profit 501(c)(3) organization which has no affiliation with the Republic, appeals the district court's March 3, 2025 denial, A-95, of its post-judgment motion to intervene in *Petersen* as untimely and for lack of a cognizable interest under Federal Rule of Civil

Procedure 24. On appeal, RA4ARG also asks this Court to order a criminal investigation by the United States Department of Justice into allegations of corruption by the Eskenazi family behind Petersen and to remand the district court's judgment in *Petersen* for vacatur.

The Republic takes no position on the merits of RA4ARG's appeal of the denial of the motion to intervene, which raises the procedural question of whether the district court abused its discretion in denying intervention, other than to state that the Republic has no affiliation with RA4ARG or its members and has had no role in, or advance knowledge of, its submissions to this Court or in the district court. The Republic also notes that it is unaware of any legal authority authorizing a U.S. court to order the United States Department of Justice to conduct a criminal investigation, which is within the Department of Justice's own discretion.

The Republic writes to address two issues. *First*, the Republic respectfully requests that RA4ARG's appeal be kept separate from the Republic's pending appeal in *Petersen*, which is fully briefed, tentatively scheduled for argument, and concerns different legal issues. The Republic's appeal raises substantial issues under Argentine and U.S. law. RA4ARG's appeal presents the narrow procedural issue of whether the district court abused its discretion in denying intervention.

*Second*, in light of RA4ARG's serious allegations of corruption related to the Eskenazi family, the Republic writes to express its own serious concerns about the

2

Eskenazis' conduct in connection with their acquisition of YPF shares. The Republic was able to take only limited discovery in *Petersen* relating to the Eskenazis and their acquisition of YPF shares and would welcome receiving any evidence that RA4ARG may have supporting its allegations that the Eskenazi family engaged in corruption in acquiring their YPF shares.

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction under 28 U.S.C. § 1291. RA4ARG filed a timely notice of appeal on March 10, 2025.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in denying RA4ARG's motion to intervene in the district court action during the pendency of the Republic's appeal of the underlying judgment in *Petersen*?

## STATEMENT OF THE CASE

On September 15, 2023, the district court entered a $14.39 billion judgment in favor of Petersen based on the Republic's alleged failure to comply with YPF's corporate bylaws. A-90-91. That judgment rests on fundamental errors of Argentine and U.S. law. A detailed factual background and procedural history of the district court proceedings in *Petersen* is set forth in the Republic's opening brief appealing that judgment. *See Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, No. 23-7370, Dkt. 228 at 10-22.

3

As relevant here, Petersen acquired its 25% stake in YPF between 2008 and 2011. D.Ct. Dkt. 393 ¶¶ 27, 39, 41. Petersen purchased virtually all of its shares directly from Spanish company Repsol—the then-supermajority shareholder of YPF—in private transactions that took place in Madrid and Buenos Aires under agreements governed by Spanish law. *Id.*; *see also* D.Ct. Dkt. 27-4 ¶ 13.1. Petersen did not acquire any of its YPF ADRs through YPF's initial public offering on the NYSE, which happened decades earlier in 1993. Petersen financed its acquisitions of YPF shares almost entirely through loans, including from Repsol, secured with the pledge of the purchased shares. D.Ct. Dkt. 393 ¶¶ 28-30, 40, 42. To repay those loans, Petersen entered into a shareholders' agreement with Repsol whereby they agreed to distribute 90 percent of YPF's profit as a dividend on a semiannual basis, irrespective of YPF's actual profits or strategic needs. *Id.* ¶¶ 31-32.

Even though the Eskenazi family had no meaningful experience in the energy sector, Sebastián Eskenazi was named the CEO of YPF in 2008. D.Ct. Dkt. 393 ¶¶ 26, 38. Following the Eskenazis' mismanagement of YPF, the Republic expropriated Repsol's shares representing 51% of YPF's total capital stock, and later reached a global settlement with Repsol under which the Republic agreed to pay Repsol $5 billion for its claims and to secure the discontinuance of all minority YPF shareholders' timely-filed claims related to the expropriation. *Id.* ¶¶ 59, 66, 92, 97-98. In 2015, after the Petersen special-purpose vehicles entered bankruptcy

proceedings in Spain, Burford Capital, a litigation-finance firm, paid approximately €15 million for the exclusive right to prosecute Petersen's claims, which the Eskenazi family had declined to pursue in Argentina, and to receive 70% of any recovery. *Id.* ¶¶ 81, 89-90, 99-101. The remainder goes to Petersen, and any recovery beyond what is needed to pay off Petersen's debts would go to the Eskenazi family.

In April 2015, Petersen, funded by Burford, sued the Republic and YPF in the Southern District of New York. D.Ct. Dkt. 1. After extensive discovery, the parties moved for summary judgment. In March 2023, the district court, without holding oral argument, denied the Republic's summary judgment motion and granted summary judgment to plaintiffs as to their claims against the Republic, which are governed by Argentine law. D.Ct. Dkt. 437 at 4-5. In doing so, the district court disregarded the Republic's interpretation of its own laws, even though the Supreme Court has held "that a government's expressed view of its own law is ordinarily entitled to substantial . . . weight." *Animal Sci. Prods., Inc.* v. *Hebei Welcome Pharm. Co.*, 585 U.S. 33, 46 (2018). The district court also granted YPF's motion for summary judgment and dismissed all claims against YPF. D.Ct. Dkt. 437 at 4.

On September 15, 2023, after a two-and-a-half day bench trial, the district court entered final judgment against the Republic in the amount of $14.39 billion,

the largest judgment in the history of the Southern District of New York and the largest ever in the United States against a foreign sovereign.  D.Ct. Dkt. 498.

The Republic has appealed that decision, which misconstrued and misapplied Argentine and U.S. law and grossly inflated damages.  Briefing on that appeal and the related appeals has been complete since August 23, 2024 (with final form briefs filed on September 6, 2024), and this Court has tentatively scheduled argument for the week of October 27, 2025.  Notably, various amici filed briefs supporting the Republic's appeal, including foreign sovereigns (Brazil, Uruguay, Ecuador, and Chile), former Argentine Supreme Court justices, a former Argentine Attorney General, influential U.S. and Argentine scholars, the City of Buenos Aires Bar Association, and the Argentine Association of Administrative Law.  All the amici that addressed Argentine-law issues uniformly supported the Republic's positions.

In February 2025, RA4ARG filed an *ex parte* motion with the district court seeking to intervene in the district court action in order to move for an order (i) requiring the United States Department of Justice to initiate a formal criminal investigation, (ii) to stay all legal proceedings in the action pending any such investigation, and (iii) to vacate the district court's judgment against the Republic. A-101, A-108-09.  The Republic had no role in, or advance knowledge of, RA4ARG's motion to intervene.

On March 3, 2025, the district court denied RA4ARG's motion to intervene as untimely and found that "RA4ARG has no cognizable interest in the litigation" under Federal Rule of Civil Procedure 24(a). A-94. The district court also explained that permissive intervention under Rule 24(b) was "unwarranted." A-94-95. As for RA4ARG's other requested relief, the district court determined that, even if it had granted RA4ARG's motion to intervene, the district court "lack[ed] jurisdiction to grant the relief that RA4ARG [sought] due to the pending appeal." A-95.

On March 10, 2025, RA4ARG filed with this Court its appeal of the denial of its motion to intervene. Dkt. 1. On April 13, 2025, RA4ARG filed a motion with this Court seeking, *inter alia*, a stay of the Republic's appeal of the underlying judgment in *Petersen* pending resolution of RA4ARG's appeal, and remand to the district court for consideration of RA4ARG's motion to vacate the judgment against the Republic. Dkt. 36. On July 25, 2025, this Court issued a notice informing the parties that RA4ARG's motion for a stay on the pending appeal in *Petersen* had been submitted to the substantive motions calendar for August 5, 2025. Dkt. 62.[1]

---

[1]     While the Republic's appeal of the underlying judgment in *Petersen* awaits this Court's review, on June 30, 2025, the district court ordered the Republic to transfer sovereign property located in Argentina—its 51% of Class D shares in YPF—to a New York bank by July 14, 2025, for turnover to plaintiffs. D.Ct. Dkt. 742. The Republic has appealed this order, which violates fundamental principles of U.S. and international law and is contrary to the position of the U.S. Government, as reflected in its statement of interest submitted to the district court. D.Ct. Dkt. 679. If the Republic prevails on its appeal of the underlying judgment, that outcome will

## SUMMARY OF ARGUMENT

RA4ARG's appeal of the district court's denial of its motion to intervene should be kept separate from the Republic's pending appeal of the underlying judgment, which involves entirely separate and distinct legal issues. This Court's consideration of those substantial issues should not be affected by RA4ARG's appeal of its intervention motion, which raises the narrow procedural issue of whether the district court abused its discretion in not allowing RA4ARG to intervene in the underlying case post-judgment. At the same time, the Republic wishes to make clear that it takes all allegations of corruption seriously and is committed to investigating any such credible allegation thoroughly.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion to intervene, whether as of right or by permission, for abuse of discretion. *New York News, Inc.* v. *Kheel*, 972 F.2d 482, 485 (2d Cir. 1992) (citation omitted).

## ARGUMENT

RA4ARG's appeal of the denial of its motion to intervene should be kept separate from the Republic's pending appeal of the underlying judgment, which

_____

moot the district court's turnover order. The potential impact of the Republic's appeal of the underlying judgment in *Petersen* on the appeal of the turnover order is another reason why RA4ARG's appeal should be kept separate from the Republic's pending appeal of that judgment.

8

involves substantial legal issues under Argentine and U.S. law. Those issues are entirely distinct and separate from the narrow procedural question of whether the district court abused its discretion in denying RA4ARG's motion to intervene post-judgment.

1. As the Republic has explained in its briefing in the appeal of the underlying judgment, *see Petersen*, No. 23-7370, Dkt. 228 at 29-81, the district court made numerous errors in reaching its judgment against the Republic. To start, the district court mistakenly took on the task of adjudicating complex claims that are Argentine in every way—claims that should never have been litigated in a U.S. court. The district court also misapplied governing Argentine public and private law, including by (i) ignoring Argentine law in creating a U.S.-style damages remedy for a "breach of contract" action that no Argentine (or U.S.) court has ever imposed for breach of a corporate bylaw, (ii) disregarding the exclusive penalty provision specified in YPF's bylaws, (iii) allowing plaintiffs' claims to proceed even though they no longer held shares when the tender offer obligation was triggered, and (iv) failing to give effect to Argentina's comprehensive system for addressing third-party claims, like those raised by plaintiffs, arising from an expropriation. In addition, the district court grossly inflated damages by relying on a currency-conversion rule that New York abrogated decades ago and by using the wrong breach date and prejudgment interest rate. The district court later acknowledged that its

9

unprecedented judgment turned on "issues of first impression and questions of Argentine law," D.Ct. Dkt. 527 at 6, issues that this Court will review *de novo*.

By contrast, RA4ARG's appeal is addressed to an entirely different issue, namely whether the district court abused its discretion in denying RA4ARG's motion to intervene under Federal Rule of Civil Procedure 24 in the action below while the judgment is pending appeal. In order to avoid confusing the multiple substantial issues presented in the *Petersen* appeal with the narrow procedural issue presented in RA4ARG's appeal, the Republic urges that RA4ARG's appeal should be kept separate from the Republic's appeal of the underlying judgment. Keeping the two appeals separate will allow this Court to better address the distinct issues presented in both appeals.

2.    With respect to RA4ARG's assertions in its May 5, 2025 brief regarding potential corruption in Petersen's acquisition of its YPF shares, Argentina has experienced firsthand how corruption not only impacts specific cases, but also undermines the integrity of republican and democratic governmental institutions. RA4ARG's submission raises serious allegations of corruption. Following receipt of RA4ARG's submission in the district court, the Republic stated that it would welcome receiving evidence that Petersen procured the $14.39 billion judgment by fraud. D.Ct. Dkt. 723 at 1.

Since at least 2012, and before the onset of this litigation, there have been criminal investigations in Argentina concerning the Eskenazi family's economically favorable, to put it mildly, acquisition of their 25% stake in YPF.[2]  As those investigations have shown, the Eskenazis have had decades of extensive business dealings with former presidents Néstor Kirchner and Cristina Fernández de Kirchner, culminating in Petersen's acquisition of YPF shares during Ms. Kirchner's presidency.  *See* A-246-251 (report from the Argentine Financial Information Unit). And in a separate case, Ms. Kirchner was convicted for corruption-related offenses, in which the Eskenazis are alleged to have played an integral role.[3]

In the district court, the Republic sought and obtained, over plaintiffs' objections, discovery about the Eskenazis and their acquisition of YPF shares.  On

---

[2]    *See, e.g.*, D.Ct. Dkt. 155 (Declaration of Professor Máximo Langer) at 26 (the "allegations against Petersen and members of the Eskenazi family in the YPF-related investigation were publicly made . . . well before this U.S. litigation was even filed" and since at least "April 13, 2012").

[3]    *See* Reuters, *Argentina top court draws curtain on Cristina Kirchner's political era* (June 10, 2025), https://www.reuters.com/world/ americas/argentinas-top-court-upholds-guilty-verdict-ex-president-kirchner-graft-case-2025-06-10/; BBC, *Cómo los Eskenazi se convirtieron en una de las familias más ricas de Argentina*, https://www.bbc.com/mundo/articles/cj61648zke3o.  The U.S. Department of State recently designated Ms. Kirchner for her "involvement in significant corruption during [her] time in public office."  U.S. Dept. of State, *Designation of Former President of Argentina and Former Minister of Planning of Argentina for Involvement in Significant Corruption* (Mar. 21, 2025), https://www.state.gov/designation-of-former-president-of-argentina-and-former-minister-of-planning-of-argentina-for-involvement-in-significant-corruption.

November 10, 2020, the Republic was forced to seek relief from the district court regarding "the failure of Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. ('Petersen') to produce critical documents from their principals, the Eskenazi family, or to produce the Eskenazis as witnesses for deposition." D.Ct. Dkt. 194 at 1. Plaintiffs opposed this discovery, claiming that "the Eskenazis' documents [were] irrelevant." D.Ct. Dkt. 207 at 4. On November 20, 2020, the Republic filed a reply again explaining that "[t]he relevance of the Eskenazis' evidence is clear: the Eskenazis entered into a highly unusual agreement with Repsol to obtain YPF shares" and "mismanaged YPF for their own benefit." D.Ct. Dkt. 217 at 1.[4]

On November 23, 2020, the district court ordered plaintiffs to produce "any documents in the possession, custody, or control of the Eskenazi Family," and to "make the Eskenazis available for deposition." D.Ct. Dkt. 219 at 2. Rather than comply with the district court's order, plaintiffs sought reconsideration. D.Ct. Dkt. 252 at 1. The district court denied that request, reiterating that "the Petersen Plaintiffs should produce the documents in the possession of the Eskenazis that are

---

[4]    *See also* D.Ct. Dkt. 217 at 4 ("claims and defenses here hinge on facts that must be developed through evidence from the Eskenazis," including "facts surrounding the Eskenazis' agreement to acquire YPF shares and to obtain exorbitant dividends from YPF," as well as the Eskenazis' "subsequent mismanagement of YPF by starving the company of investment in order to carry out their dividend scheme").

responsive to Defendants' discovery requests and . . . make the Eskenazis available for deposition." *Id.* at 4.

The Republic also requested documents, including "[l]etters, memoranda, reports, emails or internal notations (or drafts of the foregoing) concerning" agreements between Repsol, Petersen, and "members of the Eskenazi family" related to Petersen's acquisition of YPF shares, from the Eskenazis in Argentina through letters rogatory issued via the Hague Convention. D.Ct. Dkt. 175-2 at 2. Four members of the Eskenazi family gave testimony in an Argentine court on February 10, 2021 for use in this action, and two members of the Eskenazi family sat for deposition. D.Ct. Dkt. 363-6; D.Ct. Dkt. 306 at 1 ("[t]he Eskenazis have . . . agreed to make Sebastián Eskenazi and Matías Eskenazi Storey available for depositions").

If RA4ARG's assertions are true, the Eskenazi family may have provided false testimony, or plaintiffs and the Eskenazi family may have withheld responsive documents in the district court, that could have been material to the outcome of the underlying *Petersen* case. Such testimony or documents may be relevant to a Rule 60 motion to set aside the judgment following the pending appeal in this action, which the Republic reserves its rights to submit, if necessary.[5]

---

[5]    *See* Fed. R. Civ. P. 60(b)(3) ("the court may relieve a party … from a final judgment" due to "fraud[,] misrepresentation, or misconduct by an opposing party"); *Thomas* v. *City of New York*, 293 F.R.D. 498, 504, 506 (S.D.N.Y. 2013) (granting a new trial, emphasizing that "intentional" "misconduct" entitles the movant "to a

The Argentine legal system, both at the constitutional and statutory levels, contains provisions specifically designed to prevent corrupt practices and to sanction those involved.[6]  The Argentine Government, under President Milei, takes all allegations of corruption very seriously and is committed to investigating any such credible allegations thoroughly.  Because of its strong commitment to fighting corruption, the Republic would support any investigation into the issues raised by RA4ARG, including by the U.S. Government, without prejudice to its arguments that U.S. courts are not the proper forum for resolving the claims in the *Petersen* case, including to the extent that evidence can be developed that the underlying judgment in this litigation was procured by fraud.

## CONCLUSION

For the foregoing reasons, the Republic urges that its appeal of the district court's judgment, which raises substantial and distinct issues, should proceed separately from RA4ARG's appeal, which turns on the narrow procedural question

---

presumption that the misconduct substantially interfered with the movant's preparation of its case[,]" and stating that 60(b)(3)'s standard is "more lenient" and aims to correct "judgments which were unfairly procured") (citation omitted).

[6]     For example, under Article 36 of Argentina's Constitution, "whoever engages in serious fraudulent crimes against the State that entail enrichment" at the expense of the democratic system is disqualified from holding public office and is labeled an "infamous traitor to the Nation."  A-200.

of whether the district court abused its discretion in denying intervention post-judgment.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio Galvis
Adam R. Brebner
Pedro José Izquierdo
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

*Attorneys for the Argentine Republic*

August 4, 2025

## CERTIFICATE OF COMPLIANCE

This Brief complies with Federal Rule of Appellate Procedure 32(a) because it contains 3,330 words.

This Brief also complies with the requirements of Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

August 4, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I filed the foregoing Brief with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit through the ACMS system.  I certify that all participants in these cases are registered ACMS users and that service will be accomplished by the ACMS system.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

August 4, 2025